IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALLAN GERSON,<br>4221 Lenore Lane<br>Washington, DC 20008<br><br>            Plaintiff,<br><br>   v.<br><br>TIMOTHY D. SCRANTOM,<br>2874 Brownell Avenue<br>Sullivans Island, SC 29482<br><br>F. RONALD JENKINS, JR.<br>1822 Pebble Road<br>Charleston, SC 29407<br><br>FREDERICK H. DULLES<br>1 Greenhill Street<br>Charleston, SC 29401<br><br>Ten STATE STREET LLP<br>180 East Bay Street<br>Charleston, SC 29401<br><br>            Defendants. | Civ. No. _____ |

COMPLAINT FOR DISSOLUTION AND WINDING UP
OF DISTRICT OF COLUMBIA CORPORATION, AND FOR DAMAGES FOR
BREACH OF FIDUCIARY DUTY AND PROFESSIONAL MALPRACTICE

Plaintiff Allan Gerson, by and through his undersigned counsel, for his Complaint alleges as follows:

## NATURE OF ACTION

1. This case is brought under D.C. Code §§ 29-1048 and 1050 to obtain appropriate orders to permit the dissolution and winding up of Meridian 361 International Law Group PLLC ("Meridian") because of irreconcilable conflict and deadlock among its members, and for an award of damages for breach of fiduciary duty and professional malpractice.

## JURISDICTION

2. Jurisdiction in this Court exists under 28 U.S.C. § 1332(a), as the matter in controversy is between a citizen of the District of Columbia (Plaintiff Gerson) and citizens of other states (all Defendants), and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

## PARTIES

3. Plaintiff Allan Gerson is a citizen and resident of the District of Columbia, and is licensed to practice law in the District of Columbia. Prior to becoming a member of Meridian, Gerson had over 20 years of experience in public international law and diplomacy. In government, he served in the United States government as Chief Counsel to the U.S. Mission to the United Nations (1981-1985); Counsel to the U.S. Delegation to the United Nations Human Rights Commission (2002); and Deputy Assistant Attorney General of the United States and Counselor for International Affairs (1985 - 1986). In academic and institutional

service, he was Distinguished Professor of International Law and Transactions at George Mason University (1992-1998), Senior Fellow for International Law and Organizations at the Council on Foreign Relations (1998-2000), and Honors Professor at The George Washington University (2001-2004). Since 1992, Gerson also maintained a law practice, specializing in matters arising under public international law, including legal issues presented by acts of terrorism conducted or sponsored by foreign states.

4. Upon information and belief, Defendant Timothy D. Scrantom is a citizen and resident of the State of South Carolina and is licensed to practice law in Georgia and South Carolina.

5. Upon information and belief, Defendant F. Ronald Jenkins, Jr. is a citizen and resident of the State of South Carolina, and is licensed to practice law in Virginia.

6. Upon information and belief, Defendant Frederick H. Dulles is a citizen and resident of the State of South Carolina, and is licensed to practice law in South Carolina and the District of Columbia.

7. Defendant Ten State Street LLP ("Ten State") is a limited liability partnership organized under the laws of the State of South Carolina with its principal place of business in Charleston, South Carolina, and is engaged in the business of providing legal services to clients, including the structuring of businesses, trusts and other entities in foreign countries which offer more favorable tax environments than does the United States. Among Ten State's principals,

employees and agents for the provision of legal services to clients are Defendants Scrantom, Jenkins and Dulles.

8.  Each of the aforementioned parties defendant is subject to the in personam jurisdiction of this Court because of the presence of one or more of the following as to each: transaction of business in the District of Columbia, supply of services in the District of Columbia, membership in a corporation organized under the laws of, and domiciled in, the District of Columbia, and causing tortious injury in the District of Columbia by acts within and without the District of Columbia.

## FACTS

### The Formation of Meridian

9.  Meridian was organized under District of Columbia law as a professional limited liability company in or about March 2004. Its members are Plaintiff Gerson, Defendants Scrantom and Jenkins, and Robin Gross, a resident of the State of New York. Its principal place of business is in the District of Columbia.

10.  Meridian was organized for the purpose of providing international legal services to clients, especially the representation of individuals and corporations injured by acts of terrorism in claims against foreign states and other entities supporting terrorism. At the time of the formation of Meridian, Gerson was known in relevant legal and diplomatic communities as skilled in developing legal and diplomatic strategies for presenting and resolving such claims against

- 5 -

foreign parties. Neither Scrantom nor Jenkins had such experience at that time. Both were, however, experienced in the area of international transactions.

11. Defendant Ten State and its employees and agents provided legal advice and legal services to Gerson concerning the organization of the business which became Meridian, and concerning the actual organization of that business. Pursuant thereto, Defendant Ten State prepared articles of incorporation for Meridian.

12. Defendant Ten State, through its agents and employees, did not prepare an Operating Agreement for Meridian, and did not advise Gerson of the risks of becoming a member of a professional limited liability company whose members were not subject to an Operating Agreement. Such risks include uncertainty concerning the distribution of income of the professional limited liability company and concerning the distribution of the assets of the professional limited liability company on its dissolution and winding up. The failure by Ten State to so advise Gerson was intentional, with a purpose to provide an opportunity to Scrantom and Jenkins to seek greater interests in the income and assets of Meridian than would have been agreed to in an Operating Agreement entered into at the time of organization of Meridian. In furtherance of this plan, during the several months after the formation of Meridian, Scrantom refused to negotiate with Gerson concerning allocation of the income and assets of Meridian.

13.     Meridian has a business checking account with a bank in South Carolina from which Scranton and, on information and belief others, have authority to withdraw funds without written approval from Gerson.

The Conduct of Meridian's Business

<em>Legal Fees from Certain Clients and Expenses Related Thereto</em>

14.     Under legal services agreements with certain persons referred to herein as the Clients, Meridian will receive fees from the Clients when certain litigations in which they are parties (hereinafter referred to collectively as the "Litigations") are resolved with payments to the clients.

15.     Meridian's members began working on the Litigations in March, 2004. Their final resolution is anticipated in 2005 and will produce substantial legal fees for Meridian.

16.     During the period in which the members of Meridian were working on the Litigations, Scrantom and Jenkins took numerous actions to enlarge their roles and importance in the Litigations at the expense of Gerson. Such actions included:

> a) failing to inform Gerson of important developments in the Litigations and failing to provide him with copies of important correspondence in the Litigation;
>
> b) excluding or attempting to exclude Gerson from important events in the Litigations, including meetings, telephone conferences and strategy sessions; and
>
> c) failing to consult with Gerson concerning strategy and tactics to be used in the Litigations.

17. Scrantom and Jenkins also took steps to curry favor for themselves with the Clients and with other key persons in the Litigation by impugning the credibility and ability of Gerson.

18. The activities alleged in Paragraphs 16 and 17 above were part of Scrantom's effort to propel himself to a leadership role in the Litigations and reduce therein the role of Gerson, so as to benefit Scrantom personally at Gerson's expense. Upon information and belief, this was all part of a concealed scheme to aggrandize Scrantom's share in the anticipated fees from the Litigations, and to diminish Gerson's share therein.

19. Beginning in and around July 2004, the expectation of receipt by Meridian of legal fees from the Litigations caused a discussion among the members of Meridian of how the fees should be allocated among its members and of how several significant expenses of the Litigations should be paid. During these discussions, which occurred orally and in writing over a period of several months, Scrantom expressed in clear terms that he was in significant disagreement with Gerson over Gerson's share in the fees to be received from the Litigations and over how certain expenses of the Litigations should be paid. In recent months, Jenkins, who all members of Meridian originally understood would be compensated by Scrantom from his portion of fees received by Meridian from the Litigations, has made demands for his own, independent distribution of fees arising from the litigations.

20. Meridian engaged several consultants to assist it in the representation of the Clients. The members of Meridian are unable to agree among themselves on the amount of fees owed to these consultants for their assistance to Meridian.

21. During the course of their recent discussions and business dealings with Gerson, Defendants Scrantom and Jenkins have made numerous statements to Gerson disparaging his skills as a lawyer and accusing him of misconduct. Many of the communications of these Defendants' to Gerson, who the other members of Meridian recognized as Meridian's chairman, used disrespectful language.

*Relationships with Potential Clients*

22. Among the assets of Meridian is a relationship with a consultant (hereinafter, the "Consultant") who is in a position to introduce and recommend Meridian to potential clients (hereinafter, the "Potential Clients") with legal claims similar to those of the Clients. Representation of the Potential Clients could yield many millions of dollars in legal fees to Meridian.

23. Notwithstanding the status of the relationship with the Consultant as an asset of Meridian, Scrantom and Jenkins have excluded Gerson from discussions with the Consultant concerning the Potential Clients and from their planning for the development of business relationships with the Potential Clients, and have refused Gerson's repeated requests for information about these matters. Such conduct has been in furtherance of a plan by Scrantom and Jenkins to divert potential business relationships from Meridian to Scrantom and Jenkins personally.

### Allocation of the Income and Assets of Meridian

24. Each of the members of Meridian made small, equal cash contributions (less than $5,000 each) to Meridian to fund its start-up and overhead expenses.

25. The most significant contribution of value by a member of Meridian to the company was Gerson's association with it. In the spring of 2004, when Meridian was formed, Gerson was recognized in relevant legal and diplomatic communities as a lawyer with skills and experience in the areas of public international law and international terrorism. Gerson's skill, experience and reputation were indispensable to Meridian in securing the engagements by the Clients to represent them in the Litigations, and were critical to the successful representation of these clients.

26. At the time of the formation of Meridian, Scrantom was an experienced international transactional lawyer. He then had no experience in representing victims of terrorism, and had no reputation in that area of law. Scrantom was therefore expected to contribute to Meridian the skills of a capable transactional lawyer.

27. Notwithstanding the value of Gerson's contribution to Meridian, in recent weeks, Scrantom and Jenkins have asserted in strong, degrading language that Gerson is entitled to only a minority share of the fees from the Litigations.

## COUNT I – Dissolution and Winding Up of Meridian

28. Gerson realleges paragraphs 1 through 27 of this Complaint as if set forth fully herein.

29. Meridian's members are in irreconcilable conflict and deadlock, and are unable to continue in business together because of mutual mistrust and lack of confidence in one another, to agree on how the legal fees to be earned from the Litigations should be used to pay certain obligations of Meridian owed to third-parties, and to agree on how the net proceeds of such legal fees should be allocated among its members. Accordingly, it is not reasonably practicable for Meridian to conduct business in conformity with the purpose for which it was formed.

WHEREFORE, pursuant to D.C. Code §§29-1048 and 1050, the Court should enter an Order:

a) authorizing Gerson, acting on behalf of Meridian, to direct the Clients to pay legal fees owed to Meridian to a bank account in the District of Columbia specially established to receive and hold these funds;

b) prohibiting any use or disposition of legal fees received by Meridian from the Clients other than as Gerson and Scrantom agree in writing, or as the Court directs pursuant to Order;

c) determining the amounts owed by Meridian to third persons in respect of the Litigations, and authorizing Gerson to make such payments and to make payments to trade creditors of Meridian;

d) determining the amounts of remaining assets of Meridian to be distributed to its members, and authorizing Gerson to make such distributions to individual members of Meridian in amounts determined by the Court based on the facts and applicable law;

e) declaring Meridian to be dissolved as a District of Columbia limited liability corporation and authorizing Gerson, on behalf of Meridian, to take necessary and appropriate actions to effectuate such dissolution and to wind up the affairs of Meridian;

f) authorizing Gerson to be reimbursed by Meridian for expenses incurred in the dissolution and winding up of the company; and

g) granting such other relief, including costs and attorneys fees, as the Court may determine to be proper and just.

### Count II – Breach of Fiduciary Duty Against Scrantom

30. Gerson repeats and realleges paragraphs 1 through 27 as if set forth fully herein.

31. As co-venturers in Meridian, Gerson and Scrantom owed fiduciary duties to one another.

32. Defendant Scrantom breached his fiduciary duties to Gerson in the ways alleged in the preceding paragraphs of this Complaint.

33. As a consequence of Scrantom's breach of fiduciary duties owed to Gerson, Gerson has been damaged through diminution of his professional reputation, loss of prospective business opportunities and, depending on the resolution of Count I of this Complaint, reduction in his rightful share of legal fees earned by Meridian from the Clients.

WHEREFORE, the Court should enter judgment in favor of Gerson and against Scrantom for damages for the injury suffered by Gerson as a consequence of Scrantom's breach of fiduciary duty, in an amount to be determined by the Court based on the evidence presented to it; for punitive damages; and for such other relief, including costs and attorneys fees, as the Court may determine to be proper and just.

**COUNT III - Legal Malpractice against Defendants Ten State and Dulles**

34.     Gerson repeats and re-alleges paragraphs 1 through 27 as if set forth fully herein.

35.     Defendants Ten State and Dulles owed duties of care, competence and loyalty to Plaintiff Gerson as legal advisors to Gerson during the formation and organization of Meridian.  Those duties required these Defendants to advise Gerson concerning his rights and obligations as a member of a professional limited liability corporation and concerning how his interests in such a corporation could be protected and promoted, and to provide such advice to Gerson using professional judgment not affected by other responsibilities or interests.

36.     Defendants Ten State and Dulles failed to fulfill their duties to Gerson of care and competence by not advising him on matters of particular concern to him as a member of what was to become Meridian.  In particular, these defendants failed to advise Gerson about the role of an operating agreement in a professional limited liability company and about the risks to Gerson of a failure of the members of Meridian to agree at the time of its formation on the interests they would have in the income and assets of the company.

37.     Such breach of duty by Defendants Ten State and Dulles was intentional, as it was the purpose of these defendants to delay the negotiation by the members of Meridian of their interests in the company until a later time, when members of Meridian other than Gerson might be able to claim greater interests in

Meridian's income and assets than they could reasonably request at the time of formation of the company.

38. At the time Ten State and Dulles were advising Gerson about the formation of Meridian, these defendants had interests in promoting and advancing the interests of Scrantom and Jenkins as members of Meridian, and such interests conflicted with those of Gerson and affected the legal advice given to Gerson about his membership in Meridian.

39. As a result of the foregoing, Defendants Ten State and Dulles have breached their professional obligations to Gerson. Such breach has injured Gerson in the following respects:

(a) Gerson has been required to commence this litigation to establish his interests in the income and assets of Meridian, because such interests were not established in an Operating Agreement for Meridian;

(b) In the event that Gerson's interests in the income and assets of Meridian are adjudicated in this proceeding at levels less than they would have been in an Operating Agreement negotiated at the time of the formation of Meridian, Gerson will have been damaged in the amount of such difference.

WHEREFORE, the Court should:

    1) enter judgment finding that Ten State and Dulles are liable to Gerson for legal malpractice, and awarding Gerson appropriate compensatory and punitive damages therefore;

    2) award Plaintiff reasonable attorney's fees and costs expended in connection with bringing this action; and

       3)    order such other and further relief as the Court deems just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY FOR ALL MATTERS PRESENTED HEREIN SO TRIABLE.

                    Respectfully submitted,

                    _____
                    Barry E. Cohen, DC Bar #180505

                    CROWELL & MORING LLP
                    1001 Pennsylvania Avenue, N.W.
                    Washington, D.C. 20004-2595
                    (202) 624-2500 telephone
                    (202) 626-5116 facsimile

                    Counsel for Plaintiff Allan Gerson

2216326.02